UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



**Sean Sullivan**

　　　　　　　　　　　　Plaintiff,

　– against –

**IStoreGreen, LLC, HK Management Group LLC,
Michael Bogart, Esq., Barbara Kaufman,
Manager, IStoreGreen, LLC, John Doe #1,
President, IStoreGreen, LLC, John Doe #2, and
Carroll McNulty Kull LLC,**

　　　　　　　　　　Defendants,

**COMPLAINT**

**JURY TRIAL DEMANDED**

Civil Action No.:



The Plaintiff respectfully alleges that:

## I.　　Introduction

1.　　The Plaintiff seeks relief and damages for the violation of the Racketeer
Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et. seq.* ("RICO") and the
Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et. seq.* ("FDCPA"), by certain of
the above-named Defendants in pursuing a course of conduct over the past couple of
years to the Plaintiff's injury, as well for several statutory and common law claims in tort
and contract committed by the Defendants under New York State law.  Each and all of
the various Defendants' acts alleged herein constituted a pattern of racketeering activity
and deception, including acts of mail and wire fraud, obstruction of justice, theft of court
records, misuse of identity documents, and identity theft.  Furthermore, the Defendants
are liable under New York State for common law claims of conversion, negligence,

1

infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing. As a result of all the acts alleged to herein, the Plaintiff seeks compensatory and punitive damages, an award of costs and attorneys' fees, and such other and further relief as the court deems just and proper.

## II.    Parties

2.    Sean Sullivan, the Plaintiff, is an unemployed attorney residing within New York City who has no current residential address.

3.    Defendant, ISTOREGREEN, LLC ("IStoreGreen"), was and still is a limited liability corporation duly organized and existing under and by virtue of the laws of the State of New York, whose place of business is 12 Hall Street, Brooklyn, New York.

4.    Defendant, HK MANAGEMENT GROUP LLC ("HK Management"), was and still is a limited liability corporation duly organized and existing under and by virtue of the laws of the State of New York, whose place of business is 12 Hall Street, Brooklyn, New York.

5.    Defendant Michael Bogart, Esq., is an attorney licensed to practice in the State of New York, whose place of business is 9 East 38th Street, New York, New York, and who has appeared on behalf of IStoreGreen in New York State Supreme Court and the Second Circuit Court of Appeals in an adversarial position to the Plaintiff.

6.    Upon information and belief, Defendant Carroll, McNulty, Kull LLC is a law firm, whose place of business is 570 Lexington Avenue, New York, New York, and has appeared on behalf of IStoreGreen in previous causes of action pursued by the Plaintiff.

7.    At all relevant times, the Defendants John Doe # 1 and John Doe # 2, are or were at all relevant times, employees of IStoreGreen and HK Management,

2

respectively.  The Plaintiff is unable to determine the names of these defendants at this time and thereby sues them under a fictitious designation.

### III.    Basis of Jurisdiction

8.  This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1337.  This Court also has supplemental jurisdiction over the claims for relief arising under New York statutory and common law pursuant to 28 U.S.C. § 1367 because they form part of the same controversy and derive from the same facts.

9.  Venue is proper pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and the Defendants are otherwise subject to personal jurisdiction in Kings County, New York State.

### IV.    Facts

10.    Beginning in April 2010, the Plaintiff leased space in a self-storage facility located at 12 Hall Street, Brooklyn, New York and managed by the Defendants under the name of IStoreGreen.  The Plaintiff used this facility to house for safekeeping, among other things, furniture, clothing, books, photographs, personal possessions, and substantially all of the paper records and documentation accrued by the Plaintiff over the course of his life of over forty years.  Initially, the Plaintiff used this facility to store such possessions as he re-located from Brooklyn, New York in April 2010 to Portland, Oregon and did not bring most of his possessions with him because he was not sure of the duration of his residence in Oregon.

3

11.  The Plaintiff ultimately returned to the East Coast in April 2011, and due to a variety of events arising from ongoing divorce proceedings with his wife, the Plaintiff found himself, over one year later, in September 2012, without a legal residence.   As a result, the self-storage unit that the Plaintiff leased from IStoreGreen was the only place for the Plaintiff to keep the vast majority of his personal possessions, as he sought to overcome his unmistakable homelessness and dire personal financial adversity.

12.  In the Winter of 2013, the Plaintiff found himself having trouble paying the monthly rent for the storage unit.  As a result, the Plaintiff requested of representatives of IStoreGreen that he be allowed to move his possessions to a less expensive unit in the facility at 12 Hall Street, and such request was granted in February 2013, the Plaintiff then executing what he believed to be a new lease agreement with the storage facility for payments of $72/month.

13.  Even with the cheaper rent for the smaller unit, the Plaintiff found himself struggling to pay rental amounts on time and ultimately received default notices from IStoreGreen by email and otherwise.  The Plaintiff ultimately sought the assistance of the New York City Human Resources Administration (the "NYCHRA") in March 2014, requesting emergency public assistance payments to cover the storage costs of the unit he leased from IStoreGreen.  The NYCHRA ultimately approved a one-time payment for the Plaintiff's outstanding storage liability to IStoreGreen up through the date of his emergency request.

14.  Over time, a new past-due balance began to accrue regarding the Plaintiff's rental of this storage unit.  Notably, future bills asserted a monthly rent (of $99.00) due on past obligations higher than the rent (of $72.00) the Plaintiff agreed to upon signing

4

the lease agreement, such increase in rent the Plaintiff disputed, calling into question the validity of the Plaintiff's stated obligation to IStoreGreen. In early 2014, the Plaintiff received a series of past-due bills and notices that invariably contained threats to sell the Plaintiff's property pursuant to New York State's Lien Law.  The Plaintiff took the threats by the Defendants to auction/sell his property seriously and informed IStoreGreen that his unit contained deeply personal and non-saleable documentation and records that they should allow him access to before any potential auction of the marketable property in the storage unit.  Specifically, in a letter dated March 8, 2014 to IStoreGreen's property manager, and delivered to the company by email to info@istoregreen.com, the Plaintiff wrote that "my storage unit contains an extensive amount of my personal papers, including my university degrees and my copy of the lease with your company, that should have no value to anyone besides myself, are not subject to auction, and should be returned to me once my property is evicted from the storage unit."  Later, in an email to info@istoregreen.com dated July 24, 2014, the Plaintiff wrote to IStoreGreen's representatives that he needed access "to his unit to pick up some court documents."  Because the Plaintiff was homeless, he was forced to keep in his storage unit at IStoreGreen important court papers needed for his divorce and child support proceedings, as well as papers relating to federal civil actions that he commenced in 2014 (including, later, an action against IStoreGreen itself).  Such documentation included past employment records, old pay stubs, past tax filings, former leases, and in essence all financial documentation the Plaintiff had accrued over more than three decades.

5

15.     In the Fall of 2014, the Plaintiff received by certified mail from IStoreGreen a Notice of Lien, dated September 18, 2014, asserting a lien in the amount of $674 on the Plaintiff's property stored at their facility. This Notice indicated that "unless payment is made by October 22, 2014 6:00 PM the property will be sold at public auction on October 23, 2014." It further stated that the Plaintiff "have a right to a judicial hearing to determine the validity of the lien and have ten (10) days from this date to notify I Store Green."

16.    Following receipt of this Notice of Lien, the Plaintiff filed a Verified Petition, dated September 30, 2014, in the Supreme Court of the State of New York, New York County challenging the validity of the lien asserted by IStoreGreen on a variety of legal grounds. An Article 78 proceeding took place at New York State Supreme Court, New York County, on October 22, 2014, which was then adjourned for a couple of days. On October 24, 2014, before a New York State Supreme Court judge, Defendant Mr. Bogart, as a representative of IStoreGreen, proposed a stipulation of settlement and the Plaintiff entered into such stipulation of settlement, agreeing that the Plaintiff's Verified Petition was thereby withdrawn and the Plaintiff would take steps to move his possessions from the storage facility by November 11, 2014. Mr. Bogart was acting under the authority granted to him by John Doe #2 of HK Management. Under the stipulation of settlement, the Plaintiff would be granted "immediate" access to his storage unit and his monetary liability to IStoreGreen would be extinguished upon his vacating the storage unit. If the Plaintiff failed to vacate the storage unity, the stipulation asserted that IStoreGreen may "enforce its right to sell Plaintiff's property."

17.    On October 26, 2014, the Plaintiff attempted to access the storage unit but found that he could not because employees of IStoreGreen had placed an additional lock on the unit for which the Plaintiff did not have a key, preventing him from accessing his property.  Later that day, the Plaintiff emailed Mr. Bogart in order to state that this double-lock violated the terms of their stipulation, preventing the Plaintiff from complying with the agreed-upon move-out date, and thereby rendering the stipulation void.  An employee of IStoreGreen replied to this email, disputing the Plaintiff's assertion of the breach of the stipulation but described a move-out process that was not in accordance with the Plaintiff's understanding of his agreement with Mr. Bogart.  This is where matters stood until, on November 13, 2014, IStoreGreen issued a new Notice of Lien to the Plaintiff, asserting a lien on the Plaintiff's property in the amount of $872.00, and threatening again the "public auction" of such property on December 18, 2014 if the lien amount was not received by December 17th.  As with its previous threat of "auction," IStoreGreen did not take the necessary steps under New York State's Lien law to conclude an auction on the date referred to in this Notice of Lien.

18.    As this new Notice of Lien presumably superseded the one that was subject to the stipulation of settlement agreed to in court, the Plaintiff responded to this new notice by filing a cause of action in federal court against IStoreGreen.  On December 5, 2014, the Plaintiff filed a cause of action in U.S. District Court for the Eastern District of New York, challenging their asserted lien, and seeking declaratory relief regarding the status of such lien relative to certain liens existing with respect to asserted child support debt of the Plaintiff's that was outstanding.  By an order and judgment dated January 26, 2015, the U.S. District Court judge dismissed the Plaintiff's

7

Complaint, stating that the court lacked subject matter jurisdiction over the cause of action.  Later in January 2015, the Plaintiff filed a substantially similar cause of action against IStoreGreen in U.S. District Court, this time in the Southern District of New York.  On February 17, 2015, this second cause of action was dismissed by the U.S. District Court Judge on res judicata grounds.  The Plaintiff appealed this ruling to the United States Court of Appeals for the Second Circuit, but that court ultimately refused to grant the Plaintiff's *in forma pauperis* application, and the Plaintiff not having the resources to pursue this appeal by the payment of applicable court filing fees, the appeal was dismissed on August 27, 2015.

19.     While this federal court litigation was taking place, the Plaintiff had not accessed his property at IStoreGreen but had no reason to believe that his property was disturbed from the unit where he left it.  Further, IStoreGreen had been repeatedly alerted in the past as to the sensitive and personal nature of the materials the Plaintiff stored at its facility.  On February 9, 2015, the Plaintiff received by email an updated bill regarding the rental liability asserted by IStoreGreen but the Plaintiff never received a new Notice of Lien by certified mail that superseded the November 13, 2014 Notice of Lien, for which "public auction" was threatened for December 18, 2014, two months before this bill.  The final past-due bill that the Plaintiff recalls receiving from IStoreGreen was delivered via email on February 25, 2015.  Over the remainder of 2015, the Plaintiff did not receive another Notice of Lien from the Defendants.   All the while, the Plaintiff pursued his claims in federal court against IStoreGreen, on whose behalf attorneys at Carroll, McNulty, Kull LLC submitted notices of appearance in federal and state court, presumably under the authority granted to them by John Doe

8

#1. As a result, outside legal counsel for IStoreGreen was aware of the Plaintiff's legal actions against IStoreGreen and John Doe #1 deemed it necessary to have them appear in these actions in the United State Court of Appeals and in state court.

20. Because the Plaintiff had not received a Notice of Lien from the Defendants in accordance with New York law after receiving the past due bills in February 2015, the Plaintiff had no reason to believe that the Defendants were taking any action to seize and market the Plaintiff's property. Ultimately, after the dismissal of his federal action by the appeals court, the Plaintiff requested access his personal documentation in storage in November 2015 so, as he had done in the past, asked by email if IStoreGreen would allow him to access his unit. On November 20, 2015, an employee of IStoreGreen responded to his inquiry as follows: "As per the New York State foreclosure schedule, the unit has been sold." On the same day, the Plaintiff sent IStoreGreen's representatives a follow-up email asking for clarification of this message and never received a response. After sending a second follow-up to IStoreGreen one month later, on December 24, 2015, copying their legal representatives, the Plaintiff received a strange communication from their lawyer on December 27, 2015, stating that "your unit was foreclosed upon and all issues related thereto litigated and decided in favor of my client." This communication goes on further to state, "I would respectfully request that you now cease and desist with all communication in regard to this matter which we, and more importantly the court considers closed. There will be no response on our part or that of our client to any future correspondence."

21. By selling the property of the Plaintiff's unit, IStoreGreen had inexplicably "sold" the Plaintiff's court documentation related to ongoing state and federal causes of

action involving the Plaintiff (including his causes of action against IStoreGreen),

identification documents of the Plaintiff's such as his passport and copies of his social

security card, the Plaintiff's degrees from college and graduate school, all of the

Plaintiff's papers he kept from his schooling, the Birth certificate and other identification

documentation of the Plaintiff's daughter, the Plaintiff's marriage license and the original

application for his marriage license, personal photographs of the Plaintiff's friends and

family, various documentation containing the Plaintiff's social security number and other

uniquely identifying information.  Furthermore, Carroll, McNulty, Kull LLC advised their

clients who are Defendants in this action to stonewall the Plaintiff regarding this

fraudulent sale of his property.  In December 2015, the Plaintiff submitted written crime

reports to the United States Attorney's Office for the Southern District of New York and

the Kings County District Attorney's office, respectively, regarding certain of the conduct

complained of herein.


## V.    Statement of Claims

## AS AND FOR A FIRST CAUSE OF ACTION FOR THE VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT


22.    The Plaintiff repeats, reiterates and re-alleges each and every allegation

contained in paragraphs 1 to 21 above with the same force and effect as if more fully

set forth at length herein.

23.    Each defendant is a "person" within the meaning of 18 U.S.C. § 1961(3) and each entity defendant is a distinct legal entity with legal rights, obligations, powers and privileges different from each other.

24.  IStoreGreen and Carroll McNulty Kull LLC (together, the IStoreGreen Enterprise") constituted an association-in-fact "enterprise" and IStoreGreen alone constitutes an entity "enterprise" within the meaning of 18 U.S.C. § 1961(4). IStoreGreen has an existence beyond that which was merely necessary to commit the predicate acts against the Plaintiff.  IStoreGreen is operated, managed and controlled principally by John Does #1 and #2. HK Management, the management entity of IStoreGreen, exercised control over the IStoreGreen Enterprise for the purposes of the RICO acts complained of herein.

25.  Each use of a wire communication or mailing identified in this Complaint in connection with the overall scheme and artifice to defraud the Plaintiff constitutes a separate and distinct violation of the federal mail fraud and wire fraud statutes, 18 U.S.C. § 1341 and § 1343.  Further, the seizure, exercise of control over, and sale of the Plaintiff's personal computer and documentation, including identification documents, passport, court papers, tax filings and past employment records, constituted separate and distinct violations of the identity fraud, passport misuse and court obstruction federal statutes, 18 U.S.C. § 1028, § 1544, and § 1509.

26.  The acts and the overall scheme and artifice identified in this Complaint were fraudulently concealed from the Plaintiff by the Defendants, and was only made apparent to the Plaintiff when he inquired about his property in the storage unit in November 2015.  The Plaintiff is still unaware of most of the facts of the disposition of

11

his property. As indicated in the December 2015 email from the attorney at Carroll McNulty Kull LLC, the Defendants took affirmative steps to conceal the misuse and confiscation of the Plaintiff's personal property and written materials that were subject to identity theft and criminal misuse, and defendant Carroll McNulty Kull LLC threatened the Plaintiff if he sought to ascertain the circumstances of his confiscated and purloined property from any of the employees of the IStoreGreen Enterprise.

27. Defendants Bogart, Kaufman and John Does #1 and #2 conducted, or participated in the conduct, of IStoreGreen and the IStoreGreen Enterprise through a pattern of racketeering activity over at least two years within the meaning of 18 U.S.C. § 1961(5) in violation of 18 U.S.C. §1962(c). Further, Defendants Bogart, Kaufman and John Doe #1 and #2 aided and abetted the underlying racketeering activity by refusing to take steps to notify the Plaintiff of the acts to seize and transfer the Plaintiff's property, as required under applicable law, particularly New York State's Lien Law, and, with respect to Mr. Bogart, in appearing in causes of action in court under false pretenses.

28. The Defendants committed acts of racketeering activity—specifically, violations of the mail fraud, wire fraud, identity theft, and obstruction of justice statutes— as alleged throughout this Complaint.

29. By reason of the Defendants' violation of 18 U.S.C. § 1962(c), the Plaintiff has been damaged in an amount to be determined at trial but believed to exceed $1,000,000, to be trebled pursuant to 18 U.S.C. § 1964.

## AS AND FOR A SECOND CAUSE OF ACTION FOR CONSPIRACY IN VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

30.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 29 above with the same force and effect as if more fully set forth at length herein.

31.  Beginning in or about October 2014 and continuing until the present, the Defendants, including Mr. Bogart. Ms. Kaufman, and John Doe's #1 and #2, knowingly agreed to facilitate the scheme and artifice to defraud the Plaintiff by managing, operating, conducting and participating in the conduct of the affairs of IStoreGreen and the IStoreGreen Enterprise in facilitating identity theft, obstruction of justice and other offenses, and conspired to do so through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(d).

32.  In furtherance of the conspiracy and to advance the objects of the conspiracy, including the concealment of the scheme and artifice to defraud, the Defendants, notably lawful representatives of IStoreGreen LLC and HK Management Group LLC, Mr. Bogart, and Ms. Kaufman, committed the overt acts identified in this Complaint, including barring the Plaintiff from accessing necessary court documentation and personal records contained in his storage unit beginning in October 2014 and then transferring such records, as well as all of the Plaintiff's property and effects described herein, to a person or people whose identity the Defendants refused to disclose to the Plaintiff, all without the Plaintiff's knowledge or consent.

13

33.  By reason of the Defendants' violation of 18 U.S.C. § 1962(d), the Plaintiff has been damaged in an amount to be determined at trial but believed to exceed $1,000,000, to be trebled pursuant to 18 U.S.C. § 1964.

34.  As a direct and proximate result of the acts referred to above, the Plaintiff suffered injury and damages including, *inter alia*, suffering and mental anguish, loss of income, injury to reputation, and humiliation and embarrassment.

## AS AND FOR A THIRD CAUSE OF ACTION FOR DECEPTIVE PRACTICES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

35.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 34 above with the same force and effect as if more fully set forth at length herein.

36.     The Defendants Mr. Bogart, Ms. Kaufman and John Doe #1 all took steps to seize, control and confiscate stored property of the Plaintiff that they were not entitled to assume control over under applicable law, and Mr. Bogart, under false pretenses, appeared in New York State Court on IStoreGreen's behalf in an Article 78 proceeding commenced by the Plaintiff in October 2014, so that Mr. Bogart may use such proceeding as a means to collect upon the alleged financial debt of the Plaintiff to IStoreGreen when the purpose of the proceeding was instead to determine the validity of IStoreGreen's asserted lien on the Plaintiff's property.

37.     In proffering a stipulation of settlement to the Plaintiff at the Article 78 proceeding, Mr. Bogart assumed the role of a "debt collector" under federal law and, as

14

an agent for IStoreGreen, mischaracterized the size and nature of the Plaintiff's debt in a legal proceeding, and further sought legal sanction to short-circuit the required enforcement procedures of New York State's Lien Law, all in violation of the Fair Debt Collection Practices Act. Further, the use of the New York State Court Article 78 Proceeding to collect on IStoreGreen's debt and circumvent New York State's Lien Law was "unfair and unconscionable" under the FDCPA because it was improper and deceptive conduct and the Plaintiff was not in a position to adequately assess IStoreGreen's intentions in collecting on the alleged debt, when the nature of the lien was centrally at issue.

38.  As a direct and proximate result of the acts referred to above, the Plaintiff suffered injury and damages including, *inter alia*, loss of valuable property, suffering and mental anguish, loss of income, injury to reputation, and humiliation and embarrassment.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR CONVERSION OF PLAINTIFF'S PROPERTY

39.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 38 above with the same force and effect as if more fully set forth at length herein.

40.  Beginning in or about October 2014 and continuing until the present, the Defendants purposefully and intentionally refused to allow the Plaintiff to access his personal property stored at 12 Hall Street, in effect assuming ownership of the Plaintiff's

property (i) before the Defendants had a legal right to assume ownership over certain of the property, (ii) even though some of the property, such as identification documents, court materials, tax filings, marriage records, and passports, the Defendants never had a right to assume ownership over, and (iii) while the Plaintiff was challenging the Defendants' asserted liens against his property in state and federal court.

41.  By excluding the Plaintiff from accessing his personal property, the Plaintiff was unable to avail himself of his clothing, his financial records, his court papers, his personal computer, and the identification records of his child, all of which he had a pressing need to consult during the time the Defendants excluded him from accessing his personal property.  Further, the Defendants unlawfully sold all of the Plaintiff's stored property without abiding by the procedures required of them under New York State's Lien Law (including, not providing a Notice of Lien with required disclosures and the date of any planned auction of property), thereby voiding any such sale as it was improperly effected and amounted to an unlawful seizure of the Plaintiff's property.

42.  By reason of the conversion of the Plaintiff's property, the Plaintiff was subjected to great indignity, humiliation, embarrassment injury to personal reputation, and loss of valuable property.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR NEGLIGENCE

43.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 42 above with the same force and effect as if more fully set forth at length herein.

44. The Defendants are in the business of, or are counsel to entities in the business of, managing self-storage retail centers and thereby should be aware of all the laws, rules and regulations governing the practices of a self-storage facility in New York State. Nevertheless, the Defendants participated in the sale of the Plaintiff's property sometime in 2015 without providing the Plaintiff a valid Notice of Lien that stated the date and time of any auction of his property, as well as the Defendants' assertion of the aggregate monetary value of such lien. The Defendants IStoreGreen and HK Management were also made aware that liens existed against the Plaintiff's personal property because of past-due child support debt asserted by the Plaintiff's former spouse and yet the Defendants failed to notify the relevant lien claimants of IStoreGreen's enforcement acts as required under applicable law. Further, the Defendants were repeatedly put on notice that the Plaintiff's storage unit contained personally identifiable documentation that was not saleable under federal or state law, yet the Defendants effected the sale of the Plaintiff's property without allowing the Plaintiff an opportunity to protect his identity and preserve court records and other documentation that no one besides the Plaintiff had a valid claim to possession, and the loss of which would prejudice and disadvantage the Plaintiff in various ongoing legal causes of action.

45. Because of the above, the Defendants negligently, carelessly and recklessly performed their duties in that they failed to use such care in the performance of their duties as a reasonably prudent and careful person would have used under similar circumstances. The Defendants had a duty of reasonable care to maintain a secure environment that respected the property rights of its customers in their property stored

at 12 Hall Street, but in fact the Defendants breached that duty to the Plaintiff by barring the Plaintiff from his property, failing to properly assert their claims to the Plaintiff's property, disposing of the Plaintiff's property unlawfully, and covering up such acts, resulting in financial and mental injury to the Plaintiff. The Defendants were negligent, careless and reckless in a manner in which they operated, controlled and maintained their agents, servants and employees, violating applicable laws, rules, procedures and policies; in that they failed to exercise ordinary care in training and supervising its employees in the appropriate way to assert a property interest in the Plaintiff's property and realize any claims on such property in accordance with applicable law; and in that the Defendants, their agents, employees and servants were otherwise negligent, careless and reckless.

46.    The conduct of the Defendants described herein exposed the Plaintiff to preventable identity theft, subjected the Plaintiff's academic degrees, including his mahogany-framed college and graduate school degrees (the products of over one hundred thousand dollars of education expenses), to the possession of a stranger who had no right to possess such mementos of achievement, caused the Plaintiff to be disadvantaged in various causes of action in state and federal court, including ones in which IStoreGreen was an adverse party, all because the Defendants failed to abide the procedures and requirements they were subject to under applicable law in asserting a legal claim on the Plaintiff's property.

47. The Defendants IStoreGreen and HK Management Group LLC are liable for the tortious conduct perpetrated against the Plaintiff based upon the theories of respondeat superior and vicarious liability.

18

48.    By reason of IStoreGreen's and HK Management Group LLC's negligence, the Plaintiff was subjected to great indignity, humiliation, embarrassment, serious pain, injury to personal reputation, and loss of valuable property.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR INFLICTION OF EMOTIONAL DISTRESS UNDER APPLICABLE NEW YORK LAW

49.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 48 above with the same force and effect as if more fully set forth at length herein.

50.    The individual Defendants Mr. Bogart, Ms. Kaufman, John Doe's #1 and 2, IStoreGreen LLC, HK Management Group LLC, and Carroll McNulty Kull LLC acted in a manner that exceeded all reasonable bounds of decency with a reckless disregard to the infliction of emotional distress upon the Plaintiff, since the Plaintiff would likely had been shocked by the outrageous acts of disposing of and selling the Plaintiff's personal identification records (including those of his daughter), his photographs of families and friends, his academic degrees and records, and his prior employment records and tax files. Further, that the conduct described herein was done by the Defendants in violation of applicable law and without any legitimate purpose but in retaliation against the Plaintiff for the causes of actions the Plaintiff pursued against IStoreGreen, and due to the animus of the Defendants against the Plaintiff personally.

51.    The individual Defendants did abuse and violate New York State's Lien Law, the New York State Uniform Commercial Code, and applicable consumer regulations,

subjecting the Plaintiff to emotional distress for losing all of his personal property and effects without justification and sufficient cause, nor the effectuation of due process.

52.  The Defendants IStoreGreen and HK Management Group LLC are liable for the tortious and negligent infliction of emotional distress against the Plaintiff based upon the theories of respondeat superior and vicarious liability.

53.  By reason of the aforesaid, the Plaintiff suffered severe mental anguish, frustration, humiliation, embarrassment, injury to personal and business reputation, indignity and great emotional distress.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

54.  The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 53 above with the same force and effect as if more fully set forth at length herein.

55.  As stated above, the Plaintiff entered into an agreement with IStoreGreen regarding the self-storage of his personal property which set forth the monthly rent and certain boiler-plate terms concerning the lease of the storage facility.  Under both federal and New York law, IStoreGreen, as a provider of services to a consumer based upon a form contract provided to its customers, had certain obligations in its conduct towards the Plaintiff, including the obligation to act in good faith and not to engage in deceptive practices in providing services to its retail customers.

56.     By selling the Plaintiff's property without providing the Plaintiff with a Notice of Lien setting forth the date of auction, as required under applicable law, by willfully transferring non-saleable personal property of the Plaintiff to someone unknown to the Plaintiff, thereby subjecting the Plaintiff to identity theft and other crimes, and by willfully concealing its acts from the Plaintiff while defending itself in a court of law against claims made by the Plaintiff, the Defendants, particularly IStoreGreen and HK Management, breached the implied covenant of good faith and fair dealing it owed the Plaintiff.  Furthermore, the Defendants refused to relate to the Plaintiff the terms of the sale of his property, potentially absconding any proceeds in excess of his actual debt obligation to IStoreGreen, and calling into question the sales process used in transferring the Plaintiff's property.

57.     By reason of the aforesaid, the Plaintiff suffered severe mental anguish, frustration, humiliation, embarrassment, injury to personal and business reputation, indignity and loss of valuable personal property.

## AS AND FOR A EIGHTH CAUSE OF ACTION FOR PUNITIVE DAMAGES

58.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 57 above with the same force and effect as if more fully set forth at length herein.

59.  The Defendants have violated important public policy interests in the maintenance of the integrity of the procedures in place regarding the enforcement of liens against consumers and the preservation of the rule of law, and in misusing the

21

trust bestowed on entities that are in the business of storing the personal property of New York State residents.

60. It is necessary to punish the Defendants for such egregious conduct and to deter the Defendants and any other retail self-storage facility that might consider similar conduct in the future.

61. Accordingly, punitive damages should be awarded to the Plaintiff against the Defendants.

## VI.    Relief Sought

WHEREFORE, the Plaintiff respectfully requests that this Court:

1.    Declare that the Defendants' conduct alleged herein violated the Racketeer Influenced and Corrupt Organizations Act, the Fair Debt Collection Practices Act and the Plaintiff's rights under the New York State common and statutory law in the manner alleged herein, upon the evidence adduced at trial or otherwise;

2.    Award the Plaintiff damages in an amount of no less than $1,000,000;

3.    Award the Plaintiff punitive damages in a yet undetermined amount for the Defendants' willful and malicious violations of the Plaintiff's rights;

22

4.    Award the Plaintiff reasonable attorneys' fees and costs; and

5.    Grant such other further and different relief as the Court deems just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 5ᵗʰ day of *April*    , 2016.

_____

Signature of Plaintiff

Sean Sullivan
General Delivery
New York, New York 10001-9999
Sullivan9499@gmail.com
(646) 398-4361